**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CHARLES MCEWEN, | ) | Case No. 03-73039 |
| | ) | |
| Plaintiff. | ) | Arthur J. Tarnow |
| | ) | District Judge |
| v. | ) | |
| | ) | Donald A. Scheer |
| MGM GRAND DETROIT, | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | |

_____

<u>OPINION AND ORDER GRANTING</u>
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE 41] AND DENYING AS</u>
<u>MOOT  DEFENDANT'S MOTIONS *IN LIMINE* [DE 38, DE 40, DE 42, DE 54]</u>

This is an employment civil rights case alleging racial discrimination under 42 U.S.C. §

1981 and Michigan's Elliott-Larsen Civil Rights Act.  Plaintiff, an African-American, claims he

was paid less than similarly situated non-minority employees and was denied promotional

opportunities by Defendant.  Plaintiff argues that Defendant maintained a promotional system

that locked him into a dead end position in Defendant's surveillance department, while

Caucasian employees were permitted to transfer to higher paying jobs in the security department.

Before the Court is Defendant's motion for summary judgment [DE 41].  Defendant

argues that Plaintiff received equal or greater pay in comparison to comparable employees.

Defendant also argues that Plaintiff failed to apply for the many jobs to which he claims he

should have been promoted over both non-minority and minority candidates.

As to the disparate pay claim, the Court finds that Plaintiff has not shown comparable

employees.  In addition, Plaintiff never applied for any of the positions to which he claims he

should have been promoted.  Plaintiff argues that it would have been futile for him to apply to

McEwen v. MGM Grand Detroit
Case No. 03-73039

these positions.  However, for the reasons explained below, the Court finds that Plaintiff is

unable to establish such futility as a matter of law, and that his failure to apply is fatal to the

*prima facie* case for failure to promote.  Therefore, for the reasons that follow, Defendant's

motion for summary judgment will be GRANTED.

I.

Plaintiff Charles McEwen is a former Detroit Police Sergeant with a distinguished career

record.  Plaintiff is African-American.  He retired from DPD in 1998 after 30 years with the

department.

Shortly after his retirement, Plaintiff heard about a job opportunity at MGM Grand

Casino in Detroit.  Plaintiff received the information from Ron Stewart, a retired Inspector with

the Detroit Police who held the position of "Senior Investigator" at MGM Grand.  Ron Stewart is

also African-American.

Two months after MGM's Detroit casino opened, in September of 1999, Plaintiff was

hired by Defendant MGM Grand as a background investigator in the surveillance department.

Plaintiff's starting salary was $40,000 per year.

Philip Doyle, a Caucasian, worked in the surveillance department at the time Plaintiff

was hired.  Doyle was hired before Plaintiff, in February of 1999, at a starting salary of $45,000.

Doyle had asked for a starting salary of between $50,000 and $55,000 because he had earned

$50,000 per year as head of security at a Henry Ford retirement village.

According to Plaintiff, the plan was for Plaintiff and Doyle to work together in

surveillance.  They would report to Ron Stewart.  Everyone in surveillance reported to Thomas

2

McEwen v. MGM Grand Detroit
Case No. 03-73039

Boyd, the vice-president of surveillance.

At his interview, Plaintiff was told that the non-negotiable salary for the background investigator job was $40,000.  He was also told that no one would be allowed to transfer out of surveillance.  According to Plaintiff, his compliance with the represented policy locked him into a dead-end position in the segregated surveillance department while his white counterparts were allowed to advance within the company.[1]

Boyd testified that although he did not specifically recall telling Plaintiff that no one could transfer out of surveillance at the interview, he did discuss this topic with Plaintiff at some point after Plaintiff was hired.  He explained to Plaintiff that the no-transfer policy was required to maintain the confidentiality of the surveillance room, that is, so former surveillance employees could not go to work on the floor with an understanding of how to cheat the casino's surveillance system.

As a background investigator, Plaintiff's duties were to investigate the qualifications and backgrounds of prospective vendors and perform background checks on close corporations and partnerships.  In other words, Plaintiff had to research the reputation of businesses with whom MGM contracted.  Plaintiff also had to forward information concerning employee licensing

---

[1]Plaintiff cites page 46 of Boyd's deposition for the proposition that Boyd told him he absolutely could not move out of the surveillance department.  However, Boyd testified that his understanding as of 1999 was that no one could transfer out of the surveillance department because "it is not industry standard to have somebody leave surveillance" for another department. Boyd did not specifically testify that he conveyed this information to Plaintiff during his interview.  Contrary to Plaintiff's assertion, Boyd's deposition does not support s the crucial factual allegation that at Plaintiff's interview, Boyd instructed that he could not transfer out of surveillance.

3

McEwen v. MGM Grand Detroit
Case No. 03-73039

requests to the Michigan Gaming Control Board (MGCB).

Prior to Plaintiff's hiring, the key task for the background investigators was to review the record of prospective employees prior to the casino's opening. Philip Doyle worked for Defendant during this pre-opening screening process.

According to Thomas Boyd, prior to Plaintiff's hiring, he had decided to pay post-opening background investigators a salary of $40,000, despite the fact that pre-opening background investigators were making $45,000. He believed that the post-opening investigators, such as Plaintiff, had a substantially reduced workload because they didn't have to perform such a large number of pre-employment screens for incoming MGM employees.

The parties dispute the magnitude of the workload for background investigators in the screening pre-opening applicants. According to Defendant, prior to MGM's opening day in July of 1999, 9,000 applicants had undergone thorough background investigations by Doyle and others in the surveillance department. According to Plaintiff, the pre-opening investigators, including Doyle, only had to perform 5,700 background checks. However, Plaintiff testified that the workload for surveillance investigators decreased considerably.

Two months after Plaintiff was hired, Doyle transferred from the surveillance department to the security department. Plaintiff asked Thomas Boyd how Doyle had been allowed to transfer. Boyd told Plaintiff that there were "special circumstances."

According to Boyd, Phil Doyle approached him about transferring to security prior to Plaintiff's first day at the casino. Boyd explained to Doyle that transfers from surveillance to security were "not normal" due to confidentiality concerns.

4

McEwen v. MGM Grand Detroit
Case No. 03-73039

Also, Boyd testified by declaration (after his deposition), that Defendant's CFO, Scott Snow, "determined that a Security Department [presumably he means Surveillance Department] employee could transfer to another department, so long as the position...was not a money-handling position."

Matthew Bainbridge, another Caucasian employee, also transferred from surveillance to security. According to Plaintiff, he was told that Bainbridge was permitted to transfer due to "special circumstances."

Plaintiff concedes that he never expressed to Thomas Boyd an interest in being transferred to the security department. Plaintiff also admits that he never applied for a position in the security department. Plaintiff argues that at all times he adhered to Boyd's representation that he could not apply for security positions after working in surveillance.

Plaintiff also testified that he was led to believe that the "special circumstances" for transfers did not apply to him. Therefore, he did not apply for transfers to the security department, even though there were security jobs that interested him.

After Doyle transferred to security, Boyd hired Tonya Provost, a Caucasian woman, to replace him.[2] Provost's starting salary was $42,000, two-thousand more than Plaintiff's starting salary. However, ten days prior to Provost's hiring, Plaintiff was given a $5,000 raise, making his salary $45,000 per year. Plaintiff concedes that he never made less than Provost.

Around the time of Plaintiff's raise and Provost's hiring, Claude Houseworth, an African-

---

[2]Plaintiff emphasizes that Provost was hired as a personal favor by Thomas Boyd because she previously worked at the same company as Boyd's wife.

5

McEwen v. MGM Grand Detroit
Case No. 03-73039

American, applied for and received a security investigator position.  The job had been posted on

the human relations department bulletin board.  Plaintiff did not apply for this job.

Later in 2001, Thomas Boyd terminated Ron Stewart.  The reason for Stewart's

termination was "a lack of work in the department."  Stewart's position, "senior investigator,"

was eliminated, and he was never replaced.  Plaintiff suggests that Tanya Provost, rather than

Ron Stewart, should have been terminated.  However, it is unclear how this could be relevant to

Plaintiff's claim that he was deprived of advancement opportunities.[3]

Plaintiff argues that Philip Doyle, his former co-worker in surveillance who transferred to

security, became part of a "private club" in the security department, which was managed by

Defendant's vice-president of security, Dennis Graham, who is white.  Plaintiff argues that the

employees in security had access to better salaries and promotional opportunities, while he was

stuck in the dead-end and segregated surveillance department.

Plaintiff filed this lawsuit on August 8, 2003.  Shortly thereafter, MGM transferred

Thomas Boyd to Las Vegas.  In May of 2005, Plaintiff was promoted to a newly-created

position, "surveillance quality assurance manager," which appears to the Court to closely

resemble the "senior investigator" position previously held by Ron Stewart.  Plaintiff's

promotion included a pay raise.  He now makes $62,500 per year.

II.

---

[3]Plaintiff's brief contains numerous allegations as to how Ron Stewart was treated
unfairly by MGM Grand.  However, Plaintiff clearly lacks standing to raise these claims, and
they are not relevant to Plaintiff's specific wage discrimination and failure to promote claims.

McEwen v. MGM Grand Detroit
Case No. 03-73039

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P 56(c). The moving party bears the initial responsibility of demonstrating that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323; 106 S.Ct. 2548; 91 L.Ed. 2d 265 (1986). Material facts are determined by the substantive law in the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). All inferences must be made in a light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

III.

A.

Plaintiff's complaint alleges violation of 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act. "[T]he elements of a *prima facie* case as well as allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (citations and internal quotation marks omitted). The same standards apply to Plaintiff's claims under Michigan's Civil Rights Act. *See Sniecinski v. Blue Cross and Blue Shield of Michigan*, 666 N.W.2d 186, 469 Mich. 124 (2003); *see also Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 464 Mich. 456 (2001).

"A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (citation omitted).

7

McEwen v. MGM Grand Detroit
Case No. 03-73039

In a circumstantial evidence case, under the approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973), a plaintiff may establish a *prima facie* case of discrimination by showing:

> (1)  he is a member of a protected class;
>
> (2)  he was qualified for the position;
>
> (3)  despite his qualifications and performance, he suffered an adverse employment action; and
>
> (4)  he was treated less favorably than a similarly situated individual outside his class.

*Johnson*, 215 F.3d at 572-73 (citations omitted).

If the plaintiff satisfies the *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Johnson*, 215 F.3d at 573.

If the defendant carries its burden, then the burden shifts back to the plaintiff to introduce sufficient evidence to create a genuine issue of material fact that the proffered reason was a pretext to discrimination.

Pretext can be established by showing: (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain the defendant's actions. *Id.* The burden of showing pretext merges with the plaintiff's overall burden of proving the claim. *Town v. Michigan Bell Tel. Co.*, 568 N.W. 2d 64, 68, 455 Mich. 688 (1997).

Plaintiff has abandoned his direct evidence theories. Therefore, the Court will address

8

McEwen v. MGM Grand Detroit
Case No. 03-73039

Plaintiff's wage discrimination and failure to promote claims under the *McDonnell Douglas* framework.[4]  It is beyond dispute that Plaintiff is a member of a protected class and is qualified for a range of positions in MGM Grand's security and surveillance departments.  Therefore, this case turns on whether or not Plaintiff can establish genuine fact issues as to the third and fourth elements of the *prima facie* case.

B.

To establish a *prima facie* case for unequal pay, Plaintiff must show: (1) he was "paid less than non-members of his [race] for work requiring substantially the same responsibility;" and (2) the unequal pay occurred under circumstances giving rise to an inference of discriminatory *animus*.  *Belfi v. Prendergast*, 191 F.2d 129, 139 (2nd Cir. 1999); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310, 1312-13 (2nd Cir. 1995.[5]

The key question in this case is whether or not Plaintiff can identify a similarly situated employee.  Recently, in *McMillan v. Castro*, 405 F.3d 405 (6th Cir. 2005), the court clarified that

---

[4]A plaintiff alleging discrimination with direct evidence is not subject to the *McDonnell Douglas* framework.  *Harrison v. Olde Fin. Corp.*, 572 N.W.2d 679, 683, 225 Mich. App. 601 (Mich. Ct. App. 1997).  The plaintiff must still establish that he suffered an adverse employment action in order to state a claim.  *See Sniecinski*, 666 N.W. 2d at 193.  "Direct evidence is evidence which, if believed, would prove the existence of a fact (such as unlawful discrimination) without any inferences or presumptions."  *Herendeen v. Mich. St. Police*, 39 F.Supp. 2d 899 (W.D. Mich. 1999) (Quist, J.); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (direct evidence of discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by" discriminatory *animus*.)

[5]Defendant supplied the citations to Second Circuit cases setting forth the *prima facie* case.  Plaintiff has not taken issue with Defendant's articulation of the test.

9

in order to determine whether or not two employees are similarly situated, the court may

consider any relevant criteria, which will "[depend] upon the facts and circumstances of each

individual case." *Id.* at 414.

"The plaintiff need not demonstrate an exact correlation with the employee receiving

more favorable treatment in order for the two to be considered 'similarly situated.'" *Id.* (quoting

*Ercevogich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998)).  Rather, "the plaintiff

and the employee with whom the plaintiff seeks to compare himself...must be similar in 'all of

the *relevant* respects.'" *Id.* (emphasis in original).

Plaintiff's brief identifies Philip Doyle and Tanya Provost as similarly situated for the

purposes of his wage discrimination claim.

Plaintiff argues that Doyle received a raise to $50,000 per year prior to his transfer to the

security department.  Defendant responds that Doyle did not get his raise until after his transfer.

While there is a fact question as to whether or not Doyle's raise preceded his transfer, there is no

material dispute as to whether or not the difference in pay between Plaintiff and Doyle was due

to race.[6]

First, Plaintiff testified that Doyle bragged about his $50,000 salary prior to moving to

---

[6]As noted above, prior to Plaintiff's employment, Ron Stewart and Phil Doyle worked as
pre-opening investigators in the surveillance department. Stewart always earned more than
Doyle.  Defendant argues that this proves it didn't pay blacks less than whites.  Plaintiff responds
that Stewart was eventually let go despite the fact that Tanya Provost was a weaker employee.
However, Plaintiff does not explain how this supports his claim that he was treated unequally
*vis-a-vis* Phil Doyle, and Defendant does not explain how its treatment of Stewart defeats
Plaintiff's claim that *he* was discriminated against.  The Court finds that this collateral dispute is
immaterial to the question of whether or not Plaintiff can establish a *prima facie* case.

McEwen v. MGM Grand Detroit
Case No. 03-73039

the security department.  Second, the "Cast Action Form" that memorialized Doyle's transfer stated his salary as $50,000, but scratched out the box for "salary change."  Finally, a salary report for Doyle states that he earned $50,000 as a "background investigator," presumably in security, in August and November of 1999.

Even assuming that Doyle was given a raise prior to his transfer, the evidence submitted by Plaintiff, namely Plaintiff's Exhibit 8, an "annual salary position title sheet" for Phil Doyle, proves that Plaintiff was not paid less because of his race.  Doyle was given a raise well before Plaintiff was even interviewed by Defendant.  The raise was suggested by Ron Stewart during the summer of 1999 because of the significant amount of work they had already performed, specifically the overtime hours they worked.  Plaintiff does not contest the fact that, unlike Stewart and Doyle, he worked regular 40-hour weeks.

Plaintiff also testified that the workload for surveillance investigators decreased considerably.  Plaintiff's testimony supports the proposition that Doyle was paid more than Plaintiff for a non-discriminatory reason, that is, because there was more work to be done prior to Plaintiff's hiring.

These facts have two important implications.  First, Stewart's affidavit suggests that he was instrumental in getting Doyle a raise for non-discriminatory reasons, namely, their performance of extra work.  Second, Doyle's raise was authorized well in advance of Plaintiff's hiring.  Thus, even if Doyle received a $5,000 raise approximately 6 months into his employment at MGM, such a raise is comparable to the $5,000 raise that Plaintiff himself received four months after starting.

11

McEwen v. MGM Grand Detroit
Case No. 03-73039

According to Plaintiff, "[Boyd's] intent to pay [Doyle] the unequal wage is the gravamen of the inequality." However, Plaintiff ignores the fact that Boyd formed his intent to give Doyle and Stewart a raise prior to Plaintiff's interview.  It would be impossible for Boyd to formulate an intent to discriminate against Plaintiff when, as far as Boyd was concerned at the time, Plaintiff did not exist.  In other words, at the time the salary was set, Boyd had no way of knowing whether or not the eventual applicant for the position would be African-American. Plaintiff has no evidence to support the contention that the salary was set at $40,000, and made non-negotiable, based on racial *animus*.  Also, Doyle's pay was increased at the urging of Ron Stewart, who argued that he and Doyle deserved a pay increase for non-racial reasons.

Finally, Defendant argues that Doyle was paid a higher starting salary than Plaintiff for a non-discriminatory reason; namely, that Doyle negotiated for a higher salary, while Plaintiff did not.  Defendant cites two unpublished cases for the proposition that when a company negotiates a different starting salary based on what an employee earned at a previous job, then as a matter of law the pay differential is based upon a factor other than protected class membership.  *See Geerts v. II Stanley Co.*, 1999 WL 33134346, **2-3 (W.D. Mich. Sept. 14, 1999) (Bell, J.); *Mowery v. Rite Aid Corp*., 2002 WL 1608342 (6th Cir. July 17, 2002).

In *Geerts*, the plaintiff was an incumbent employee who was promoted from within to a position identical to that of a recent external hire.  At the time of her promotion, the plaintiff was paid $1,000 per year less than the new external hire.  The court held that "because [the new hire] was an external hire and Plaintiff was an internal promotion from an hourly position, their starting salaries were arrived at using different methodologies."  *Geert*, *supra* at *3.  As a result,

12

McEwen v. MGM Grand Detroit
Case No. 03-73039

the disparity in pay fell within the "catch-all" exception to the Equal Pay Act, for factors unrelated to gender.

In *Mowery*, the Sixth Circuit concluded that genuine fact questions precluded summary judgment on the plaintiff's equal pay act claim because the district court erroneously disallowed a comparison between the plaintiff, a pharmacist, and pharmacists at the defendant's other stores within her region. However, the court affirmed summary judgment for the defendant as to one comparable pharmacist because the comparable had negotiated a higher salary along with the defendant's buyout of his independent store. Such negotiation, the court held, amounted to a basis other than sex upon which the defendant lawfully based a difference in pay.

In this case, Boyd was offered $40,000 to start, but requested that he be paid between $50,000 and $55,000 because he made $50,000 at his previous job. More importantly, Doyle was promoted from within based on his recent experience and extra hours spent preparing MGM for its grand opening. The Court finds that this difference is enough to warrant some disparity in pay as between Doyle and Plaintiff, without inferring that the disparity was based on racial discrimination.

Plaintiff argues that unlike Doyle, he was explicitly told during his interview that his starting salary of $40,000 was non-negotiable. Ron Stewart's affidavit confirms that when Boyd told Stewart he was looking for a new surveillance investigator, he also instructed that the salary was inflexible. However, as noted above, this proves that Boyd formed the intent to make the salary non-negotiable without race in mind. That is, Boyd fixed the salary before he knew that the eventual applicant, who turned out to be Plaintiff, would be black. There is simply no

13

McEwen v. MGM Grand Detroit
Case No. 03-73039

evidence which could persuade a reasonable fact finder to conclude that, as compared to Phil Doyle, Boyd fixed a lower starting salary for Plaintiff's position because of race.

Plaintiff's brief does a nice job establishing that Tonya Provost was not qualified to replace Phil Doyle as a surveillance investigator and that she probably got her job as a personal favor through Boyd and his wife. In addition, for some unexplained reason, Boyd decided to pay Provost a starting salary of $42,000, despite the fact that she had no prior security experience and because the budget for investigators at the time of Plaintiff's hire, four months earlier, was firmly set at $40,000. However, Plaintiff's claims of wage discrimination as to Provost fail because there is no dispute that he was never paid less than Provost.

Plaintiff has not cited any authority for the proposition that a wage discrimination plaintiff can establish a *prima facie* case without showing that he was paid less than the allegedly comparable employee at all times.

Plaintiff concedes that he was given a $5,000 raise ten days before Provost was hired and that he was never paid less than Provost. Although Provost was paid a higher *starting* salary than Plaintiff, Defendant apparently took this factor into account when it decided to give Plaintiff a raise. Plaintiff's argument that he should have been given a larger raise, or that Defendant could have somehow turned back the clock to pay him a higher starting salary, is without merit.

## C.

A failure to promote may constitute an adverse employment action. *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405 (6th Cir. 1999) (construing adverse employment action under

14

McEwen v. MGM Grand Detroit
Case No. 03-73039

Title VII).  Defendant sets forth the following formulation of the *prima facie* case, which

Plaintiff does not dispute:

(1)    Plaintiff belongs to a protected class;

(2)    He applied for and was qualified for a job for which the employer was
       seeking applicants;

(3)    He was considered for and denied the promotion; and

(4)    Other employees of similar qualifications who were not members of the
       protected class received promotions.

*See Sutherland v. Michigan Department of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003),

*Pomransky v. Zack Co.*, 159 Mich. App. 338, 343-44; 405 N.W.2d 881 (1987); and *Storch v.*

*Beacon Hotel Corp.*, 788 F.Supp.960, 964 (E.D. Mich. 1992).

There is no dispute that Plaintiff never applied for any of the security department

positions at issue.  Therefore, the only material issue on summary judgment is whether or not

Plaintiff can establish a reason why the application process was futile, in which case the second

prong of *prima facie* case may be excused.

Employment discrimination Plaintiffs may be excused from proving that they applied for

a position if they demonstrate that application would have been futile.  *See Int'l Brotherhood of*

*Teamsters v. United States*, 431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977).

Plaintiff makes two arguments for why applying for a security position would have been

futile: (1) the security jobs were not posted; and (2) Plaintiff was explicitly told that surveillance

department personnel could not apply for jobs outside of surveillance.

In failure to promote cases, the Sixth Circuit applies the following rule for the posting of

15

McEwen v. MGM Grand Detroit
Case No. 03-73039

available promotions:

> In failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion where the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion. Instead, the company is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known.

*Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000).

There is conflicting evidence as to whether or not the security job taken by Doyle was posted. Dennis Graham, vice president of security, testified at his deposition that as to this particular opening for a security investigator, he did not know where the job posting went, he was not the person who would have posted the job because postings went through human resources, he did not know who posted the job, he had "no idea" where they posted the job, did not recall seeing the posting, and could not find the job posting in any of his files for discovery purposes.

Later, in his declaration, Graham testified that Doyle's position was "posted in both the security department and by human resources." Plaintiff argues that the inconsistency between Graham's deposition and declaration creates a genuine question of fact as to whether or not the jobs were posted.

Also, security manager Bruce Sewell testified that he did not see any posting for the security job that was given to Doyle:

> I learned that Phil Doyle had been transferred from the Surveillance Department to the Security Department after I saw him sitting in an office near Dennis Graham and he told me he had obtained the position of "Investigator" in our department. I did not know the position of "investigator" was available. There was no posting in our department for that job. There was no e-mail publication that the job was available. It was my habit and custom to check the employee bulletin board where available jobs were supposed to be posted according to the company policy. At the time Phil Doyle received his position that board was

16

McEwen v. MGM Grand Detroit
Case No. 03-73039

located on the 3rd Floor Hallway adjacent to the Employee Dining Room [EDR].
The job was not posted there.

Sewell Affidavit, P's Exh. 21.

Defendant argues that Graham's deposition testimony does not mean that the job that Doyle accepted was not actually posted. Defendant also argues that Graham's declaration clarifies that the job was posted. However, Defendant does not explain how Graham came to know this information, which he did not know at the time of his deposition.

Defendant also argues that Sewell's affidavit does not create a factual question because it only means that Sewell didn't see a posting. However, Defendant has not produced any uncontradicted evidence that the job *was* posted. Defendant cannot demand that Plaintiff be required to prove a negative, i.e., that the job wasn't posted, in order to create a factual dispute.

Defendant does make two arguments for why the so-called *Dews* exception, stated above, does not apply in this case. First, Defendant argues that Plaintiff would not have applied for the positions even if they were posted. Defendant relies on Plaintiff's testimony that he wasn't sure whether or not he would have desired a position in security, and would have to know what positions were available before answering that question.

The problem with this argument for Defendant is that Plaintiff unequivocally testified that he desired to apply for the security positions filled by Doyle, who is a Caucasian, Victor Pegg, who is African-American, and Dan Herrera, who Defendant says is Hispanic. As a result, Defendant's reliance on Plaintiff's testimony is not entitled to any weight.

For Plaintiff, the problem with this argument is that his testimony suggests that he knew about the open jobs but did not apply for them. Plaintiff has not explained how he could have maintained a desire for these positions, while not knowing about them in the first place. In

17

McEwen v. MGM Grand Detroit
Case No. 03-73039

response to the question, "Were you aware of what positions existed in the security department?"
Plaintiff responded, "Some of them, yes."  If Plaintiff knew about the jobs, then his failure to
apply is fatal to his claims, unless he can establish futility.

Second, Defendant argues that three of the five openings in security were filled by
minorities.  Claude Houseworth, an African-American, was hired by Graham as a security
investigator in September of 1999.  Victor Pegg, an African-American, replaced Doyle.  Plaintiff
does not dispute that the position was posted and that he did not apply.  Rosalind Pennywell, an
African-American, was hired into security prior to Plaintiff's employment and was promoted
internally to assistant shift supervisor and eventually to manager.  The common denominator
among the foregoing employees, other than race, appears to be their prior experience in lower
levels of MGM Grand's security operations.

Pennywell's initial hire is relevant to the extent that it proves security was willing to hire
African-Americans, assuming they applied.  This fact undercuts Plaintiff's futility argument.
Plaintiff does not dispute that the security manager position taken by Pennywell was posted, and
does not dispute that he did not apply for the position.

Finally, Defendant argues that even if the jobs for which Plaintiff was interested were not
posted, the failure to post is immaterial because there is no evidence that Defendant was using its
"secret" hiring practices to exclude minority employees from the security department.
Defendant cites *Donahoo v. Ohio Dep't of Youth Services*, 237 F. Supp. 2d 444 (N.D. Ohio
2002), where the court declined to apply the *Dews* exception to a situation where, pursuant to
Ohio law, the employer exercised its discretion to not post for an "unclassified position" within
the state agency.

In *Donahoo*, the court relied on two key facts in distinguishing *Dews*: (1) the plaintiff
was aware of the position, despite the fact that it wasn't posted; and (2) the defendant had

18

McEwen v. MGM Grand Detroit
Case No. 03-73039

consistently promoted minority employees to similar positions, a fact which rebutted Plaintiff's

contention that the failure to post worked to exclude minorities:

> [A]s Plaintiff states, the *Dews* exception was created to address instances in
> which the failure to post a position results in a segment of the workforce (e.g.,
> African Americans) being excluded from promotions. The Court finds that,
> where there is no evidence that such exclusion or segregation has taken place, as
> in the instant case, the *Dews* exception to a *prima facie* case is not applicable.
> This is especially true when the would-be applicant, Plaintiff, was aware of the
> vacancy.

*Donahoo*, 237 F.Supp.2d at 864.

The court in *Donahoo* relied on the district court's decision in *Frazier v. Ford Motor Co.*,

176 F.Supp.2d 719 (W.D. Ky. 2001) (Heyburn, J.), where the court granted summary judgment

to the defendant because the plaintiffs, who were aware of un-posted positions, failed to pursue

several available channels for expressing their interests in the positions. The court held that

*Dews* did not apply because nothing prevented the plaintiffs from pursuing the position.

Citing *Donahoo* and *Frazier*, Defendant argues that because minority candidates

obtained positions in the security department, the question of whether or not the jobs were

actually posted is immaterial. The Court is hesitant to apply those cases here because there is a

question of fact as to whether or not Plaintiff was told he could not transfer out of surveillance.

This suggests that he was prevented from applying for security positions, even if they were

posted. In addition, the Court recognizes that under the controlling law of the Sixth Circuit, the

employer has a duty to ensure that available jobs are available to all qualified employees. *See

Dews*, *supra* at 1022.

Plaintiff argues that he was locked in a dead-end surveillance position by his adherence

to Boyd's representation that surveillance employees could not transfer out of the department.

Plaintiff has not made any specific argument as to how this policy, if it truly existed, was

motivated by race. Defendant argues that once Plaintiff saw other surveillance employees, such

19

McEwen v. MGM Grand Detroit
Case No. 03-73039

as Doyle and Bainbridge, transfer to security, he should have been aware that he could also move out of the department.

To establish futility, the plaintiff must have evidence to show that he would have applied but for discrimination, and that he would have been discriminatorily rejected had he applied. *Int'l Brotherhood of Teamsters, supra*. Plaintiff cites *Teamsters* for the proposition that "[a] consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." Plaintiff's Brief at 20.

Even when the evidence is construed in the light most favorable to Plaintiff, he cannot establish that the security department maintained a "consistently enforced discriminatory policy." As discussed above, Plaintiff has not made any argument to contradict Defendant's position that at least two African-Americans moved into security positions. Nor can he dispute that he has recently obtained a security position, although he appears to argue that this was a token gesture conceived as a litigation tactic.

Ultimately, when the Court looks back in time to determine whether or not Plaintiff was locked in to a position of futility by virtue of race discrimination, it must decide whether or not race motivated Boyd's representation that Plaintiff could not apply for jobs in other departments beyond surveillance. Plaintiff argues that when he inquired with Boyd as to how Doyle and Bainbridge obtained security positions, he was told there were "special circumstances." He argues that the special circumstance must have been their whiteness.

Defendant argues that Boyd was color blind as to the no-transfer policy. As to Doyle, Boyd disallowed a transfer, but was vetoed by CFO Scott Snow. As to Bainbridge, Boyd was not the decision maker. A separate executive for "surveillance operations," Larry Williams, allowed Bainbridge to move on.

20

McEwen v. MGM Grand Detroit
Case No. 03-73039

Plaintiff's burden at this point is to show some specific evidence in the record to support an inference that the surveillance department's no-transfer policy was based on race. Plaintiff's brief does not present any evidence to support this inference, and the deposition excerpts attached as exhibits are too abbreviated to make such a determination independently.

The fact that several African-Americans other than Plaintiff successfully moved into security, and that Plaintiff himself recently moved into security, strongly support granting Defendant's motion. In addition, the excerpts from Boyd's deposition suggest that he did not adhere to the no-transfer policy because of racial *animus*, but rather because he thought it was required by gaming regulations.

The Court is unable to find any evidence in the record suggesting that Boyd told Plaintiff he could not apply for security positions because of his race. Plaintiff has conspicuously failed to make any argument as to how the security department could have maintained a policy of discrimination that would have deterred him from applying, when in fact security hired many African-Americans. Defendant has set forth a credible explanation, other than race, for why Boyd may have told Plaintiff that he could not transfer from surveillance. While the evidence shows that Boyd may have misunderstood the technical details of MGM Grand's transfer policy, it fails to show that he conveyed this message to Plaintiff because of his race. Therefore, the Court finds that Plaintiff was told he could not apply for security positions for reasons unrelated to race, and that no reasonable fact finder could conclude otherwise.

IV.

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment [DE 41] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion *in limine* as to future damages

21

McEwen v. MGM Grand Detroit
Case No. 03-73039

[DE 38] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion *in limine* to exclude testimony

[DE 40] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion *in limine* as to punitive damages

[DE 42] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion to preclude Plaintiff from filing

additional motions and from responding to Defendant's motions *in limine* [DE 54] is DENIED

AS MOOT.

SO ORDERED.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  January 12, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 12, 2006, by electronic and/or ordinary mail.

s/Theresa E. Taylor
Case Manager

22